IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FELICIA BRISCO                                        PLAINTIFF

VS.                          CIVIL ACTION NO. 5:07-cv-99(DCB)(JMR)

LETOURNEAU TECHNOLOGIES, INC.                          DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the defendant LeTourneau Technologies, Inc. ("LeTourneau")'s motion for summary judgment **(docket entry 60)**. Having carefully considered the motion and the plaintiff's response, the memoranda of the parties and the applicable law, and being otherwise fully advised in the premises, the Court finds as follows:

The plaintiff, Felicia Brisco ("Brisco"), was an employee of LeTourneau from August of 2006 until February 1, 2007, when she was terminated after testing positive for drugs pursuant to her employer's policy of periodic drug testing.  Brisco filed her complaint in the Circuit Court of Warren County on March 30, 2007, alleging claims solely under Mississippi law for (1) wrongful termination, (2) negligence, (3) defamation and slander, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) "harassment and humiliation."[1]  The action was subsequently removed to this Court

---

[1] In her response to LeTourneau's motion for summary judgment, Brisco concedes that "harassment and humiliation" is not a separate claim.

by LeTourneau on the basis of diversity of citizenship, 28 U.S.C. § 1332.

LeTourneau moves for summary judgment on grounds that, <u>inter alia</u>, Brisco's claims are barred by the at-will employment doctrine, that LeTourneau "acted reasonably and responsibly in balancing the need for safety in a hazardous and demanding environment with due regard to the rights and privileges of its employees," and that Brisco has come forward with no evidence that would suggest otherwise. Mtn. for Summ. J'ment., p. 2.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ...." Fed.R.Civ.P. 56(c). In determining whether there are any genuine issues of material fact, this Court must first turn to the applicable law to discern what factual issues are, indeed, material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Fields v. City of South Houston, Tex.</u>, 922 F.2d 1183, 1187 (5th Cir. 1991). Then, the Court must examine the evidence of the type listed in Rule 56(c) to detect the existence or non-existence of a material issue. <u>Id</u>., at 1187. Further, "... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

2

<u>Anderson</u>, at 248.  The Fifth Circuit has added:

> Both the Supreme Court and this circuit have addressed,
> at length, how much evidence the nonmoving party must
> present.  The Supreme Court explained that the standard
> for granting summary judgment mirrors the standard for a
> directed verdict.  ... "[T]he mere existence of <u>some</u>
> alleged factual dispute between the parties will not
> defeat an otherwise properly supported motion for summary
> judgment ...." ... Nor is the "mere existence of a
> scintilla of evidence" sufficient .... This circuit has
> described the amount of evidence the nonmoving party must
> bring forward as "significant probative evidence." ...
> This may be equated with the "substantial evidence"
> standard used to determine whether a directed verdict is
> appropriate.

<u>State Farm Life Ins. Co. v. Gutterman</u>, 896 F.2d 116, 118 (5th Cir.

1990)(citations omitted).

The moving party bears the initial burden of establishing the

absence of genuine issues of material fact.  <u>Celotex Corp. v.

Catrett</u>, 477 U.S. 317, 323 (1986); <u>Lavespere v. Niagara Mach. &

Tool Works</u>, 910 F.2d 167, 178 (5th Cir. 1990).  Once the burden of

the moving party is discharged, the burden shifts to the nonmoving

party to go beyond the pleadings and show that summary judgment is

inappropriate.  <u>Id</u>., at 178; <u>Fields</u>, at 1187.  The nonmoving party

is obligated to oppose the motion either by referring to

evidentiary material already in the record or by submitting

additional evidentiary documents which set out specific facts

indicating the existence of a genuine issue for trial.

Fed.R.Civ.P. 56(e); <u>Fields</u>, at 1187.  If the opponent fails in her

duty, summary judgment is implicated.  <u>Id</u>., at 1187.  The United

States Supreme Court has also stated that summary judgment is

mandated where sufficient time for discovery has elapsed and a party has failed to establish an essential element of her case upon which she would have born the burden of proof at trial. <u>Celotex</u>, <u>supra</u>, at 322; <u>Washington v. Armstrong World Indus.</u>, 839 F.2d 1121, 1122 (5th Cir. 1988).

LeTourneau manufactures offshore oil rigs at its facility on the Mississippi River near Vicksburg, Mississippi.  Manufacture of the rigs involves heavy construction and includes working with and around materials weighing many tons.  The work is potentially dangerous if not done properly and with due regard to safety.  When Brisco was hired by LeTourneau in August of 2006, she signed papers in connection with the employment process, acknowledging and agreeing that she was being hired as an at-will employee, that LeTourneau had a drug-free workplace policy that included periodic drug testing, that she would submit to the drug tests and abide by LeTourneau's drug policy, and that testing positive would result in her termination from employment.  Brisco Depo., pp. 19, 24-28, 33-43, and Exhibits 2, 4, 13, 15 & 16 thereto.

The plaintiff's first claim, for wrongful termination, is barred by Mississippi's employment-at-will doctrine.  It is undisputed that Brisco was an at-will employee under Mississippi law.  Mississippi has carved out two narrow exceptions to the employment-at-will doctrine.  The first arises where the employee is terminated because of (1) a refusal to participate in illegal

4

activity, or (2) reporting the illegal activity of her employer to the employer or anyone else.   McArn v. Allied Terminix Co., 626 So.2d 603, 606-07 (Miss. 1993).   The plaintiff has not alleged either prong of this exception.   The second exception provides that, under certain circumstances, employees are required to follow the procedures for disciplining or discharging employees for misconduct specifically covered by an employment manual.   Bobbitt v. Orchard, Ltd., 603 So.2d 356, 361 (Miss. 1992); but see Byrd v. Imperial Palace of Miss., 807 So.2d 433 (Miss. 2001)(employment handbook with effective disclaimer creates no contractual duties). The plaintiff does not show that the Bobbitt exception is applicable to her case.   Her claim for wrongful termination is therefore without merit.[2]

In her next claim, for negligence, the plaintiff alleges:

... that the process of collecting the hair samples for the drug test was conducted in a negligent manner leaving room for error in the results.

... that Travis Wyatt, laboratory technician and collector acting with apparent authority from the Defendant, did not wear any type of latex or medical gloves when collecting the hair samples from Plaintiff's scalp.

... that prior to cutting [the plaintiff's] hair, Travis Wyatt, laboratory technician and collector acting with apparent authority from the Defendant, retrieved the scissors and comb from the sanitary solution and sprayed

_____

[2]  Brisco also asserts that Mississippi would recognize a public policy exception to the employment-at-will doctrine in her case, but she does not articulate a recognized public policy nor provide any authority for her assertion.

these items with an unknown substance.

... that the negligent handling of her hair specimens was
the proximate cause of the false information that led to
the termination of her employment and subsequent
emotional distress, embarrassment, [and] humiliation and
that she has continued to suffer harm and damages as
alleged and seeks an award of compensatory and punitive
damages as prayed for below.

Complaint, ¶¶ 17-21. The claim for negligence contains no
allegation against LeTourneau itself other than that Travis Wyatt,
the laboratory technician, was "acting with apparent authority"
from LeTourneau.

LeTourneau performed monthly random drug tests on all
employees. Twenty employees were selected for testing each month.
The selection was made by an independent third party, Texas Alcohol
and Drug Testing Service, using a random number generating program
based on employee badge numbers. Clay Masters, LeTourneau's
Manager of Human Resources, would then match the badge numbers to
employee names. Those employees were then periodically called to
the Safety Department. Masters Depo., pp. 18-19, 29-30; Wyatt
Depo., pp. 14-15.

Wyatt was an employee of Trinity Medical Management
("Trinity"), an independent third party with which LeTourneau
contracted to provide paramedic services in case of emergency and
to collect samples for LeTourneau's periodic drug testing policy.
The plaintiff's samples were collected in a room in the Safety
Department trailer, with only Wyatt and Brisco present. Masters

Depo., p. 11; Wyatt Depo., pp. 9, 14-16; Brisco Depo., pp. 54, 70-71.  The samples were then sent off for analysis, using chain of custody procedures, to Omega Laboratory in Ohio, another independent third party.  Wyatt Depo., pp. 16-18; Maters Depo., p. 31; Masters Aff., ¶ 5.

In Brisco's case, the hair samples tested positive for cocaine under an immunoassay test.  They were then subjected to a gas chromatograph/mass spectometer ("GC/MS") test, which was also positive.  A confirmation re-test was then performed, also yielding positive results.  Dr. David Engelhart Depo., pp. 19-21.  The results of the tests were then reviewed by a medical review officer, Dr. Daniel Drew of Nationwide Medical Review in Ohio, another independent third party.  As part of his review, Dr. Drew consulted with Brisco concerning any prescription drugs she was taking.  Brisco Depo., p. 80.  He subsequently confirmed the results of the tests, and issued a final positive report to LeTourneau.  Masters Aff., ¶ 10.

Assuming, arguendo, that Wyatt was negligent, as alleged, in some aspect of the handling of Brisco's hair samples, LeTourneau would not be liable for Wyatt's negligence because Wyatt was an employee of Trinity, not LeTourneau.  See Walker v. McClendon Carpet Service, Inc., 952 So.2d 1008, 1009-10 (Miss. App. 2006)(doctrine of respondeat superior creates employer liability for negligence of its employees, but not for negligence of

independent contractors).  Nowhere does Brisco allege that Wyatt was a LeTourneau employee.  Certainly, Trinity and its employee Wyatt were authorized to collect hair samples as part of LeTourneau's drug testing policy, but their relationship to LeTourneau was that of independent contractor.  The plaintiff has failed to show the existence of a genuine issue of material fact with regard to whether Wyatt was an employee of LeTourneau for the purpose of imputing liability under the doctrine of respondeat superior.

The Court also finds no merit in the plaintiff's claim that LeTourneau violated Mississippi's Drug and Alcohol Testing statute, Miss. Code Ann. §§ 71-7-1, et seq.  The provisions of that statute are voluntary, and employers are not required to comply with them. See § 71-2-27(2).  Moreover, an employer need not opt out of the statute, but must, instead, affirmatively elect to follow it.  See § 71-7-27(1).  Where an employer does not affirmatively elect to conduct an employee drug and alcohol testing policy pursuant to the statute, "the rights and obligations of the employer and its employees and job applicants will not in any way be subject to or affected by the provisions of [the statute], but will instead be governed by applicable principles of contract and common law." § 71-7-27(2).  The plaintiff does not allege that LeTourneau has made an affirmative election to follow the statute, and this claim is without merit.

Brisco also alleges that LeTourneau is liable to her for both intentional and negligent infliction of emotional distress, citing its "failure to inform her of available options regarding the test results." Complaint, ¶¶ 28, 31.  In order to recover for a claim of intentional infliction of emotional distress, the plaintiff must show that "there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally ... the result being reasonably foreseeable ... even though there has been no physical injury." Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 902 (Miss. 1981).  In order to recover for a claim of negligent infliction of emotional distress, the plaintiff need not show that she suffered a physical injury, but she must show "a resulting physical illness or assault upon the mind, personality or nervous system ... which is medically cognizable and which requires or necessitates treatment by the medical profession." Leaf River Forest Products v. Ferguson, 662 So.2d 648, 658 (Miss. 1995)(citing Devers, 405 So.2d at 900).  The plaintiff does not allege any intentional acts by the defendant which could evoke outrage or revulsion.  Nor does she allege an injury cognizable in a negligent infliction of emotional distress claim.  These claims are without merit.

The plaintiff's final claim is for defamation.  The complaint alleges that "the falsity of the information provided by the drug test results has been disclosed to individuals other than those

designated to receive such information as provided by Section 71-7-15 of Mississippi Code Annotated." Complaint, ¶ 23.  As previously discussed, the Drug and Alcohol Testing statute, Miss. Code Ann. §§ 71-7-1, et seq., is not applicable to LeTourneau inasmuch as the defendant has not affirmatively elected to follow the statute. Brisco's defamation claim is therefore governed by common law.

     To establish a claim of defamation, the plaintiff must prove the following:

> (1) a false and defamatory statement was made concerning the plaintiff; (2) there was an unprivileged publication to a third party; (3) the publisher was negligent in publishing the defamatory statement; (4) the plaintiff suffered damages resulting from publication of the defamatory statement.

Mitchell v. Random House, Inc., 703 F.Supp. 1250, 1255 (S.D. Miss. 1988), aff'd, 865 F.2d 664 (5th Cir. 1989).  "[T]o state a claim for defamation, it is necessary that the defamation be 'clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'"  Id. at 1256 (quoting Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984)).  Both the Fifth Circuit and the Mississippi Supreme Court have emphasized that this requirement must be strictly enforced.  See Mize v. Harvey Shapiro Enterprises, Inc., 714 F.Supp. 220, 224 (N.D. Miss. 1989)("The Fifth Circuit has recognized that these requirements are stringently applied by Mississippi courts and indicated that it will do the same.").  Furthermore, under Mississippi law, "the trial court in a defamation case must make the threshold

10

determination of whether the language in question is actionable." Mitchell, 703 F.Supp. at 1256.

In Mississippi, a claim for defamation must set forth the statements, paraphrased or verbatim, that constituted the defamation. Chalk v. Bertholf, 980 So.2d 290, 298 (Miss. Ct. App. 2007). Without information concerning the nature of the statements and how they were defamatory, a mere allegation that defamatory statements were made "constitutes a bare legal conclusion." Id.

In this case, the plaintiff fails to set forth information regarding the substance or nature of any alleged statement or how it was defamatory. The complaint contains only conclusory allegations that the results of the drug tests were "false," and that the results were "disclosed" to unnamed individuals. Complaint, ¶ 23. In addition, Brisco has not presented a genuine issue of material fact disputing the accuracy of the tests or showing that LeTourneau had any reason to believe that the test results were false.

In support of her defamation claim, Brisco submits the affidavit of Aaron Wilson, Jr., who states that "[j]ust about everyone at the plant knew the reason [Brisco] was fired." He states that he learned that Brisco was terminated for failing a drug test from another LeTourneau employee, Jimmy Barber. Wilson Aff. LeTourneau has produced an affidavit of Barber which discloses that he learned of the circumstances of Brisco's

11

termination from Brisco herself.   Barber Aff., p. 2.   LeTourneau
has submitted affidavits from two additional LeTourneau employees,
Tom Smith and Michael Jackson, whom Brisco identified as having
knowledge of her drug test results.   Like Barber, Smith and Jackson
state that they learned of the circumstances of Brisco's
termination from Brisco herself.   Smith Aff., p. 2; Jackson Aff.,
p. 2.

     In order to recover from LeTourneau on her defamation claim,
Brisco must show that defamatory statements were made by one or
more Letourneau employees acting within the scope of their
employment.   See Berhow v. The Peoples Bank, 423 F.Supp.2d 562, 572
(S.D. Miss. 2006).

> To be "within the scope of employment," the act must have
> been committed in the course of and as a means to
> accomplishing the purposes of the employment and
> therefore in furtherance of the master's business.  Also
> included in the definition of "course and scope of
> employment" are tortious acts incidental to the
> authorized conduct.  Stated another way, a master will
> not be held liable if the employee "had abandoned his
> employment and was bout some purpose of his own not
> incidental to the employment."  That an employee's acts
> are unauthorized does not necessarily place them outside
> the scope of employment if they are of the same general
> nature as the conduct authorized or incidental to the
> conduct.

Adams v. Cinemark USA, Inc., 831 So.2d 1156, 1159 (Miss.
2002)(internal citations omitted).

     Other than employees who learned of the results of Brisco's
drug test directly or indirectly from her, the plaintiff has
identified a single LeTourneau employee, Brody Massey, whom she

12

alleges made a defamatory statement to a third party.  According to the plaintiff, Massey made statements to the Warren County District Attorney's Office in connection with criminal proceedings involving Brisco's son.  Brisco Depo., pp. 171-72.  Mississippi recognizes a qualified privilege for communications "which would otherwise be defamatory ... if they are made in good faith in the prosecution of any inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing to justice the criminal." Illinois Cent. R.R. v. Wales, 171 So. 536, 538 (Miss. 1937).

In general, a qualified privilege attaches to a communication "made in good faith on any subject matter on which the person communicating has an interest or in reference to which he has a duty to protect to a person having a corresponding interest or duty, even though it contains matters, which, without this privilege, would be actionable, and although the duty is not a legal one, but only [a] moral and social duty of imperfect obligation."  J.C. Penney Co. v. Cox, 148 So.2d 679, 682 (Miss. 1963).  Where a qualified privilege exists, a presumption of good faith arises.  Hayden v. Foryt, 407 So.2d 535, 539 (Miss. 1981). The burden is on the plaintiff to show malice, bad faith, or abuse. Eckman v. Cooper Tire & Rubber Co., 839 So.2d 1049, 1052 (Miss. 2005).  In order to defeat a motion for summary judgment, a plaintiff must present affirmative evidence creating a genuine issue of material fact as to actual malice.  Id. at 1054.  "Actual

13

or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, [and] exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with the design to willfully or wantonly injure another." Young v. Jackson, 572 So.2d 378, 385 (Miss. 1990).

In this case, the Court finds that the qualified privilege attaches by operation of law to any statement made by Brody Massey to the Warren County District Attorney's Office, assuming such statement was otherwise defamatory. The Court further finds that the plaintiff has not come forward with any affirmative evidence that would create a genuine issue of material fact regarding bad faith, malice or abuse.

As for the other alleged defamatory communications, Brisco has not offered any evidence that an employee of LeTourneau disclosed inappropriate information while acting within the course and scope of his or her employment. The mere fact that the circumstances of Brisco's termination were well known does not in itself constitute evidence that LeTourneau published the information to anyone either orally or in written form. The fact that a rumor is widespread proves nothing about its origin. This is especially true here, where several employees swore that the plaintiff herself had

14

advised them of her adverse drug test results.  The plaintiff's defamation claim is therefore without merit.

Because the defendant's motion for summary judgment is dispositive of the entire action, the Court does not reach the defendant's supplemental motion for summary judgment, motion for leave to file supplemental evidence, or motion in limine regarding Mike Crawford, all of which are moot.  Accordingly,

IT IS HEREBY ORDERED that the defendant LeTourneau Technologies, Inc.'s motion for summary judgment **(docket entry 60)** is GRANTED.

A separate final judgment shall be entered dismissing this action with prejudice.

SO ORDERED, this the 27th day of October, 2008.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE